**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SHANNON DAY HILL,           ) | |
|                           ) | |
|            Plaintiff,       ) | Civil Action No. 07-1455(RWR) |
|                           ) | |
|         v.                  ) | |
|                           ) | |
| UNITED STATES,          ) | |
|                           ) | |
|         Defendant.     ) | |

## REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

This case involves a tort claim brought by an employee of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") against her supervisor for assault and battery. Specifically, Plaintiff contends that her supervisor, William Crummett, touched her name badge on March 12, 2007, and entered an elevator with her on March 14, 2007. As a result of the Westfall certification filed by the United States, which found that Crummett acted within the scope of his employment at the time of the alleged incidents, the United States was substituted as defendant, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2679(d)(1). As explained in Defendant's motion to dismiss, Plaintiff's FTCA claim must be dismissed for lack of jurisdiction because: (1) Plaintiff has not exhausted her administrative remedies; (2) even if Plaintiff had exhausted her administrative remedies, her claims would be barred because they arise out of an alleged assault and battery, and thus fall within the intentional tort exception of the FTCA; and (3) Plaintiff seeks remedies that the FTCA does not authorize, namely prejudgment interest, a jury trial, and punitive damages. See Mem. In Support of Defendant's

1

Motion to Dismiss (Dkt. Entry 4) (hereafter "Def. Mem."). Moreover, the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. §§ 8101 *et seq.,* provides an exclusive remedy for injuries arising out of a federal employee's employment, including physical attacks by fellow employees.

In her opposition, Plaintiff does not dispute these legal principles, but instead argues that Crummett was not acting within the scope of his employment when he allegedly assaulted and/or battered her. From that premise, Plaintiff infers that the FTCA's exhaustion requirements do not apply to this case, that FECA is inapplicable because Crummett was not acting within the scope of his employment, and that FECA does not preclude her from suing Crummett in his individual capacity. Plaintiff admits that the complaint is "very brief," but requests discovery on the scope of employment issue. Plaintiff's Opp. to Defendant's Motion to Dismiss at 5 n. 1 (Dkt. Entry 8) (hereafter "Opp.").

The Westfall certification should be upheld, without discovery, because Crummett was acting within the scope of his employment. Plaintiff bears the burden of providing facts to rebut the certification, and the complaint's sparse allegations do not come close to meeting that burden. Plaintiff's opposition memorandum is similarly devoid of factual support, and rests entirely on conclusory and unsupported factual assertions concerning the nature of the alleged incidents and Crummett's motives. The governing D.C. law clearly establishes that entering an elevator with a coworker and touching a coworker's name badge during an office discussion concerning name badge policies are within the scope of Crummett's employment, and there is no material factual dispute concerning these issues. As Plaintiff effectively concedes, she has no viable claim unless this Court reverses the scope of employment certification, or requires

discovery on the scope of employment issues.  Thus, the complaint should be dismissed pursuant to Rule 12(b)(1).

## ARGUMENT

As Defendant previously argued, the United States is the proper defendant in this tort case, and Plaintiff's claims must be dismissed because she has not complied with the FTCA's exhaustion requirements, and the FTCA does not permit suits for assault and battery.  See Def. Mem. at 1-8.  Plaintiff does not contend that she filed an administrative tort claim with ATF, and does not dispute that the FTCA exempts certain torts such as assault and battery.  Instead, she challenges the scope-of-employment certification, arguing that she needs discovery to determine whether Mr. Crummett was acting within the scope of his employment when he allegedly "grabbed her in an elevator."[1]

When a federal employee acting within the scope of his or her employment is sued in tort, the Westfall Act generally dismisses the employee from the action and substitutes the United States as the proper defendant. 28 U.S.C. § 2679(d)(1)(1988); see Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 419-420 (1995).  Once the Attorney General or appropriate designee certifies that a federal defendant was, in fact, acting in an official capacity at the time of the tortious incident, a subsequent action is deemed an action exclusively against the United States and falls under the provisions of the FTCA.  Lamagno, 515 U.S. at 419-420.  That certification — which in this case was made by  Rudolph Contreras, Chief of the Civil Division of the United States Attorney's Office for the District of Columbia — "constitutes prima facie evidence that

---

[1] That characterization of the alleged incidents conflicts with the allegations in the complaint.  The complaint states that Crummett touched Plaintiff's name badge without her permission, and that, on a separate date, he entered an elevator with her in a manner that made Plaintiff feel threatened.

the employee was acting within the scope of his employment." Rasul v. Myers, __ F.3d __,

2008 WL 108731, at *6 (D.C. Cir. Jan. 11, 2008) (internal citations omitted).  Here, Plaintiff's

conclusory allegations that Crummett was not acting within the scope of his employment are not

sufficient to rebut the certification.

> **A.    Plaintiff Has Neither Alleged Facts Sufficient to Challenge the Scope-of-Employment Certification Nor Shown that Discovery is Necessary.**

A plaintiff that challenges the scope-of-employment certification "bears the burden of

coming forward with specific facts rebutting the certification." Stokes v. Cross, 327 F.3d 1210,

1214 (D.C. Cir. 2003); see also Rasul, 2008 WL 108731, at *6 (quoting same).  The certification

must be respected "unless and until the District Court determines that the original defendant, in

fact, engaged in conduct beyond the scope of his employment." Wilson v. Libby, 498 F. Supp.

2d 74, 97 (D.D.C. 2007) (emphasis in original).  However, not every complaint will warrant

further inquiry into the scope-of-employment issue. See Stokes, 327 F.3d at 1216; Koch v.

United States, 209 F. Supp. 2d 89, 92 (D.D.C. 2002) (explaining that discovery or an evidentiary

hearing are only necessary if the court concludes that there is a "genuine dispute of fact material

to the scope-of-employment issue"), aff'd No Civ. A. 02-5222, 2002 WL 31926832, at *1 (D.C.

Cir. Dec. 31, 2002).  Neither discovery nor an evidentiary hearing on the scope issue is necessary

if the plaintiff fails to allege any facts in her complaint that, if true, would demonstrate that the

defendants had been acting outside the scope of their employment. Stokes, 327 F.3d at 1216

(citing Singleton v. United States, 277 F.3d 864, 871 (6th Cir. 2002)); Wilson, 498 F. Supp. 2d at

99; Kalil v. Johanns, 407 F. Supp. 2d 94, 99 (D.D.C. 2005) (holding that plaintiff failed to justify

need for discovery into the scope of employment issue); Caesar v. United States, 258 F. Supp. 2d

1, 5 (D.D.C. 2003) (finding that the underlying material facts were undisputed, and thus the

Court could find, as a matter of law, that the defendant was acting within the scope of her employment).

Plaintiff's conclusory assertion that she needs to gather additional facts to challenge the scope-of-employment certification warrants neither an evidentiary hearing nor discovery. The complaint contains no factual allegations which, if true, would rebut the certification. Instead, it simply states that on March 12, 2007, Plaintiff's coworker and supervisor Crummett allegedly "grabb[ed] identification hanging on Plaintiff's neck," Compl. ¶ 6, and that on March 14, 2007, Crummett "clandestinely arranged to enter the elevator in which Plaintiff was alone to cause further apprehension and fear towards Plaintiff." Id. ¶ 8. Given that Plaintiff's <u>allegations</u> do not create a material dispute, she would need to produce additional <u>evidence</u> in order to justify discovery. <u>See</u> <u>Klugel v. Small</u>, 519 F. Supp. 2d 66, 74 (D.D.C. 2007) (explaining that Rule 56(f) required Plaintiff to provide affidavits to support her request for discovery on a scope of employment certification dispute). Plaintiff has clearly failed to produce any such evidence. Instead, the opposition memorandum simply makes unsupported and conclusory statements that Crummett acted for his self-interest, and that the acts occurred "outside the time and space of their respective offices." Opp. at 2. Plaintiff also misperceives the burden of proof, suggesting that <u>Defendant</u> bore the burden of providing additional factual evidence to <u>support</u> the certification, rather than acknowledging her burden to provide evidence to <u>rebut</u> it. As discussed in more detail <u>infra</u>, this scope-of-employment challenge can be resolved on the current record, which clearly establishes that Crummett's alleged conduct was within the scope of his employment. Discovery on these allegations would be pointless.

**B.      Crummett was Acting Within the Scope of His Employment at the Time of the Alleged Incidents.**

The law of the District of Columbia governs the question of scope of employment in this jurisdiction. See Haddon v. United States, 68 F.3d 1420, 1423 (D.C. Cir. 1995) (citing Kimbro v. Velten, 30 F.3d 1501, 1506 (D.C. Cir. 1994)). The Court of Appeals for the District of Columbia looks to the Restatement (Second) of Agency to define scope of employment. See Rasul, 2008 WL 108731, at * 7; Haddon, 68 F.3d at 1423-24. Under the Restatement,

> [c]onduct of a servant is within the scope of employment if, but only if: [a] it is the kind he is employed to perform; [b] it occurs substantially within the authorized time and space limits; [c] it is actuated, at least in part, by a purpose to serve the master; and [d] if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

Restatement (Second) of Agency § 228(1). Applying the Restatement factors to this case, it is clear that Mr. Crummett was acting in the scope of his employment when the alleged incidents occurred.

**1.      Crummett's Alleged Conduct Was Of the Kind He Is Employed to Perform.**

As interpreted by D.C. courts, the first Restatement factor does not require that the conduct fall within an employee's job description or the employer's actual or objective expectations of or instructions to the employee. Instead, the conduct need only be "of the same general nature as that authorized, or incidental to the conduct authorized." Rasul, 2008 WL 108731, at *8 (emphasis added) (quoting Restatement (Second) of Agency § 229(1)). Tortious conduct is "incidental" to an employee's legitimate conduct if it is "foreseeable." Id. Foreseeability measures whether "it is fair to charge employers with the responsibility for intentional torts of their employees," and torts that are a "direct outgrowth of the employee's

6

instructions or job assignment" are deemed foreseeable.  Id.

Here, the alleged incidents involving Plaintiff and Crummett were foreseeable.  As Plaintiff contends, Crummett was her supervisor.  Although the complaint provides almost no details, a contemporaneous memorandum from Plaintiff to Crummett's supervisor makes it clear that these incidents arose from, and hence were incidental to, Plaintiff's professional interactions with Crummett.[2]  Plaintiff contends that she and Crummett were "discussing the fact that [they] needed to obtain a copy of Arlington Co. TFOs ATF media badges and that he wanted [her] to obtain them," and that Crummett touched her badge "[a]s [he] said this to [her]."  Exhibit 1.  That conversation clearly "was undertaken on the employer's behalf," as both Plaintiff and Crummett are ATF employees and their discussion was work-related.  Wilson, 498 F. Supp. 2d at 98.  It is also apparent that the conduct was a "direct outgrowth" of Crummett's responsibilities.  Rasul, 2008 WL 108731, at *8 (quoting Haddon, 68 F.3d at 1424).

Turning to the alleged elevator incident, the memo states that "at approximately 1230 [Plaintiff] was departing the group I office . . . [and] proceeded to the elevators," and that she saw Crummett in the conference room speaking to a team-member.  Exh. 1.  Crummett allegedly saw Plaintiff leaving, and "jumped into the elevator and stated 'finally we are alone.'"  Id.  Again, this alleged incident was connected to the parties' job assignment, as they were leaving a conference room and office and entering the elevators outside the offices during business hours.  ATF, like other employers, could reasonably expect a supervisor to be in an elevator with a subordinate employee at 12:30, and it is fair to charge ATF with responsibility for any

---

[2] Defendant does not concede that the incidents took place as described in the complaint and/or Plaintiff's memo, or that they occurred at all.  However, for purposes of this motion, Defendant assumes arguendo that Plaintiff's allegations are true.

confrontation or exchange of words that occurred during that elevator ride.

Plaintiff's assertion that Crummett was not "employed to have physical contact or batter coworkers" misperceives the legal standard. Opp. at 4. Tortious conduct need not comply with the employee's job description or the agency's policies and procedures in order to fall within the scope of employment for purposes of the FTCA. See Wilson, 498 F. Supp. 2d at 98 (noting "plaintiffs cannot rebut the Westfall certification simply by arguing that defendants' actions were illegal"); Rasul, 2008 WL 108731, at *10 (explaining that "criminal conduct is not per se outside the scope of employment"). The mattress delivery man in Lyon v. Carey, 533 F.2d 649 (D.C. Cir. 1976), who assaulted and raped a customer was not hired to engage in physical violence, and the laundromat employee in Johnson v. Weinberg, 434 A.2d 404 (D.C. 1981), who shot a customer in a dispute about the quality of cleaning was not hired to shoot customers. Likewise, the military personnel in Rasul were not hired to torture Guantanamo Bay detainees, and the Congressman in Council on American Relations v. Ballenger, 444 F.3d 659 (D.C. Cir. 2006), was not hired to defame or slander organizations. Yet their actions were deemed to be of the kind they were employed to perform, for purposes of the Restatement analysis. Thus, the pertinent question is whether the allegedly tortious acts arose out of conduct that the alleged tortfeasors were hired to perform. See Ballenger, 444 F.3d at 664 (noting that the "proper inquiry" is whether the telephone conversation in which defamatory statements allegedly were made was the kind of conduct Ballenger was employed to perform). Here, the issue is whether Crummett's entry into the elevator, and his conversation with Plaintiff concerning name badges, were incidental to his job. See Rasul, 2008 WL 108731, at *8-*9 (discussing prior cases which illustrate this concept); Wilson, 498 F. Supp. 2d at 98-99 (same). They plainly were.

8

**2.    The Alleged Incidents Occurred Substantially Within Authorized Time and Space Limits.**

The alleged elevator and name-badge incidents occurred "substantially within the authorized time and space limits," and therefore satisfy the second prong of the Restatement test. Although Plaintiff states that the conduct occurred outside the office and after hours, Opp. at 4, the complaint is silent on that issue, and Plaintiff has submitted no other evidence to support that bald assertion. Plaintiff's memo describing these incidents, however, makes clear that the name badge incident occurred "in the office" while Plaintiff and Crummett were discussing their need to obtain name badges, and that the elevator incident occurred "at approximately 12:30" in an elevator outside a conference room and office in which Plaintiff and Crummett were working. Exh. 1. Given that conduct arising when an employee is driving <u>to</u> the office occurs "within the authorized time and space limits," surely conduct that occurs <u>in</u> the office, and/or in the building's elevators also meets this prong of the Restatement test. See <u>Healy v. United States</u>, 435 F. Supp. 2d 157, 163-64 (D.D.C. 2006) (accident that occurred when FBI agent was driving a colleague to work was within the time and space limits); <u>see also</u> <u>Wilson</u>, 498 F. Supp. 2d at 99 (concluding that conversations that occurred on a Sunday on which some official government business took place were within scope of employment).

**3.    Crummett's Conduct Was Actuated, at Least in Part, by a Purpose to Serve His Employer.**

D.C. courts read the third Restatement factor broadly, and deem conduct outside the scope of employment only if it was motivated by purely personal reasons having nothing to do with serving the employer. See <u>Hechinger Co. v. Johnson</u>, 761 A.2d 15, 24 (D.C. 2000). As this Court has ruled, "'the acts of an agent motivated partly by self-interest – even where self-

interest is the predominant motive – lie within the scope of employment so long as the agent is actuated by the principal's business purposes to any appreciable extent.'" Freiman v. Lazur, 925 F. Supp. 14, 19 (D.D.C. 1996) (quoting Local 1814, Int'l Longshoremen's Ass'n v. National Labor Rel. Bd., 735 F.2d 1384, 1395 (D.C. Cir. 1984) (additional internal quotation marks omitted)); see also Howard University v. Best, 484 A.2d 958, 987 (D.C. 1984) ("Thus, in assault cases, it has been held that the master may be liable for an assault arising out of and committed in the course of employment even though the assault is motivated in part by passion, savagery, or personal revenge."). Thus Plaintiff bears the heavy burden of establishing that Crummett's conduct was totally unrelated to the workplace, or any workplace dispute, and instead arose entirely from a personal motive.

A brief discussion of similar cases illustrates the broad reach of this Restatement factor. In Howard University v. Best, the D.C. Court of Appeals court held that a jury could reasonably find that a university dean acted within the scope of his employment when he sexually harassed a faculty member during faculty, administrative and other meetings. 484 A.2d at 987. Similarly, in Brown v. Argenbright Security, Inc., 782 A.2d 752 (D.C. 2001), the court held that a security company could be held liable for the acts of its employee who allegedly sexually assaulted, in the course of an investigation, a minor whom he suspected of shoplifting. The court held that a reasonable jury could have found that the security guard's actions were motivated at least partially by a desire to serve his employer, resulting in vicarious liability of the employer, particularly because the employer's interests were involved to the extent that the actions in question began with a physical search of a suspected shoplifter. Id. at 758. In Hechinger Co. v. Johnson, 761 A.2d 15, the court found that an employee of a retailer was acting within the scope

of his employment when he struck a customer in the chest after the customer attempted to remove some wood from the store without paying for it, and noted that the assault grew out of a job-related controversy.

Plaintiff has alleged no facts that would indicate that Crummett's actions were purely driven by personal motives. Instead, the name badge allegedly was touched while Plaintiff and Crummett were discussing the need to obtain media badges from others. See Exh. 1. Thus, the record supports an inference that Crummett's actions grew out of a work-related conversation. It is reasonable to infer that Crummett's entry into the elevator, like Plaintiff's, was motivated by a work-related need and desire to travel to another floor in the office building. Plaintiff's suggestion that Crummett was sexually harassing her, Opp. at 5, does not preclude a factfinder from concluding that Crummett's conduct served the employer's interests at least in part. See Howard University, 484 A.2d at 987 (concluding sexual harassment could be within scope of employment when it occurred during meetings); see generally Faragher v. City of Boca Raton, 524 U.S. 775, 807-810 (1998) (explaining circumstances in which employer may have vicarious liability under Title VII for sexual harassment by supervisors).

> **4.     Plaintiff Does Not Allege That Crummett Used Force, But Any Use Of Force Would Have Been Within the Employer's Expectations.**

Courts typically do not engage in a separate analysis of the fourth Restatement factor, which is understandable given the overlap between it and the first factor's foreseeability analysis. Plaintiff does not address this factor in her opposition brief, and the complaint does not allege that Crummett used force when he allegedly entered the elevator, or touched her name badge. Indeed, the complaint's allegations concerning the elevator incident state only that Crummett's presence in the elevator constituted assault, and do not contend that any physical

11

contact between Crummett and Plaintiff occurred. However, if the Court were to construe the alleged name badge touching as involving force, that incident was foreseeable for the reasons set forth supra, and thus satisfies the fourth Restatement factor.

## CONCLUSION

For the foregoing reasons and those set forth in Defendant's Motion to Dismiss, Plaintiff's complaint should be DISMISSED.

Dated: January 25, 2008                    Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


___/s/ Robin M. Meriweather_____
ROBIN M. MERIWEATHER, D.C. Bar. # 490114
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C.  20530
Phone: (202) 514-7198
Fax: (202) 514-8780
Robin.Meriweather2@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 25th day of January, 2008, I caused the foregoing Reply to be

filed and served via the Court's Electronic Case Filing system or, should I receive notice from

the ECF system that electronic service was unsuccessful, to be served upon plaintiff by first-

class mail, postage prepaid, addressed as follows:

Athan T. Tsimpedes
1420 New York Avenue, NW 7th Floor
Washington DC 20005


_____/s/___*Robin M. Meriweather*_____
ROBIN M. MERIWEATHER, D.C. Bar # 490114

**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

March 22, 2007

www.atf.gov

768050:SRD
2410

MEMORANDUM TO:  Special Agent in Charge
Washington Field Division

THRU:  Assistant Special Agent in Charge
Washington Field Division

THRU:  Group Supervisor
Washington I

FROM:  Special Agent Shannon Day-Hill
Washington I

SUBJECT:  Second request for temporary transfer from Washington I

Please find this memorandum as a second official request to be temporarily transferred from
Washington Group I.

On 3/14/07 at approximately 1230 I was departing the group I office. As I did so I saw GS
Crummett in the conference room speaking to a member of the Inspection Team. GS Crummett
saw me leaving. After departing the office I proceeded to the elevators. As I was entering the
elevator I noticed, in my peripheral vision, someone running toward me. As I entered the
elevator GS Crummett jumped into the elevator and stated "finally we are alone." At this point I
became frightened and immediately exited the elevator before the doors could shut.

On 3/12/07 GS Crummett approached me in the office and began discussing the fact that we
needed to obtain a copy of Arlington Co. TFOs ATF media badges and that he wanted me to
obtain them. As GS Crummett said this to me he touched the badge that was around my neck,
which is not an ATF media badge. In order to do this GS Crummett placed his hand just under
my breasts, where the badge was displayed.

On 3/9/07 while meeting with GS Crummett in his office for my mandatory morning briefing GS
Crummett asked that I "pull over a chair and sit right next to me." I declined and stood just close
enough to see what he wanted to show me and then went back to my chair on the other side of
his desk.

On 3/15/07 GS Crummett met with me to discuss Case # 768050-05-0020, which I had submitted to be closed. GS Crummett gave the case back to me along with pages of discrepancies that he wanted me to correct. Included in this was the written statement that he had spoken to me about all of this before. This is not true. I had met with GS Crummett for a RAC/GS review on four prior occasions, 8/22/05, 12/13/05, 4/10/06, and 11/14/06, which is documented in the management log. At no time during these RAC/GS reviews did Crummett address any of the issues that were brought to my attention on 3/15/07, even though GS Crummett states that we have discussed these issues in the past. GS Crummett had already closed the case, so I could not make the changes. Also, case #'s 768050-05-0057, 58, and 59 were all part of the same investigation and contained data similar to 0020. These cases were turned in to be closed on 2/9/07 and were closed by Crummett on 2/12/07 with no issues.

On 3/14/07 I was informed by other members of Group I, SA Meixner, SA Green, and SA Berryman, that GS Crummett had approached them individually and informed them that I had initiated an EEO and IA investigation against him. GS Crummett then asked them if they had any problem with him. GS Crummett then began to speak about me in derogatory terms.

Since I contacted EEO and ASAC Brownlee concerning issues with GS Crummett I have come under an increasing barrage of harassment from GS Crummett, incidents which are outlined here and in previous memos addressed to SAC Domenech. It has come to the point, especially after the incident on 3/14/07, where I am now in fear for my personal safety. In previous memorandums to SAC Domenech I requested that I be removed from the supervision of GS Crummett, I am now making that request again. As I stated before, I take great pride in my position with ATF and in my ability to produce quality work. However, the stress of this situation has caused me to not be able to properly sleep or eat. I am considering seeking medical help to deal with the stress. In addition I feel that I cannot turn in any work product to GS Crummett due to the fact that he will find discrepancies, which were previously not discrepancies, document them and use them to devalue my performance appraisals.

I have been under the supervision of Group Supervisor William Crummett since August of 2004. During that time I have been forced to work in an atmosphere that has become more and more hostile. I am currently in the process of outlining the specifics of this hostile environment and discrimination in an EEO complaint. However, recent events have caused me to believe that I can not safely, emotionally or physically, work with Group Supervisor Crummett.

Shannon Day-Hill